UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
JOHN CAWLEY,                             :

                     Plaintiff,   :

        -against-             :     **MEMORANDUM AND ORDER**

NANCY BERRYHILL, ACTING                  :     17-CV-4651 (KNF)
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,                 :

                    Defendant.    :
------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## INTRODUCTION

John Cawley ("Cawley") commenced this action against the acting Commissioner of Social Security ("Commissioner"), seeking review of an administrative law judge's ("ALJ") decision, dated February 26, 2016, finding him ineligible for disability insurance benefits, pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401-434. Before the Court are: (a) the plaintiff's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure[1]; and (b) the defendant's motion for judgment on the pleadings, pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## ALJ'S DECISION

Cawley alleged disability beginning December 17, 2013. An administrative hearing was held, on February 2, 2016, at which Cawley, represented by counsel, and a vocational expert testified. The issue before the ALJ was whether Cawley is disabled. The ALJ determined that

---

[1] The Court will "treat plaintiff's motion for summary judgment as a motion for judgment on the pleadings, which is technically the proper vehicle under the Social Security Act for a decision on the merits of the complaint." Graham v. Heckler, 580 F. Supp. 1238, 1239 n.2 (S.D.N.Y. 1984).

1

Cawley: (1) meets the insured status requirements of the Social Security Act through December 31, 2018; (2) has not engaged in substantial gainful activity since December 17, 2013; (3) "has the following severe impairment: degenerative disc disease and herniation of the cervical spine with distant history of fusion a[t] the C5 to C6 level; bilateral shoulder tendinosis with impingement, particle tear, and status post left shoulder arthroscopy May 2014; degenerative disc disease and disc bulges of the lumbosacral spine and right knee derangement; right carpal tunnel syndrome and trigger finger status-post [A]ugust 2014 surgical release; and, left carpal tunnel syndrome status-post October 2014 surgical release"; (4) does not have an impairment or combination of impairments that meets or medially equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (5) has the residual functional capacity to perform light work and "can lift and carry 20 pounds occasionally and 10 pounds frequently," "can sit or stand and walk for six hours each in an eight-hour day," "[i]f seated," "requires the opportunity to stand for a minute or two at 30 minutes intervals," "can frequently handle bilaterally but only occasionally feel and finger with the left non-dominant hand," and "can occasionally reach overhead, climb stairs, and kneel"; (6) is unable to perform any past relevant work; (7) was 49 years old; and (8) has at least a high school education and is able to communicate in English. The ALJ found that transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that Cawley is not disabled, regardless of the transferable job skills. The vocational expert testified that an individual with Cawley's residual functional limitations would be able to perform the requirements of representative occupations, such as bench assembler and rental clerk. The ALJ found that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles ("DOT"). Based on the vocational expert's

testimony, the ALJ concluded that Cawley is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. Considering Cawley's age, education, work experience and residual functional capacity, the ALJ found that jobs exist in significant numbers in the national economy that Cawley can perform. The ALJ determined that Cawley has not been disabled from December 17, 2013, through the date of the ALJ's decision.

In determining whether Cawley has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments, the ALJ found that Cawley's severe impairments

> do not meet any of the [Listings 1.02, 1.03, 1.04(A), 1.04(B) or 1.04(C)] thresholds as there is insufficient evidence any of these conditions, considered singly or in combination, causes sensory or reflex loss, manifests as spinal arachnoiditis, or creates chronic nonradicular pain accompanied by an inability to ambulate effectively, or results in the inability to independently carry out activities of daily living.

In assessing the medical evidence, the ALJ gave "some weight" to an opinion by Dr. Julio V. Westerband, made for the purpose of a worker's compensation assessment, "as it is generally consistent with the objective findings and the claimant's activities of daily living," but fails to "state specific restrictions in overhead activities or prolonged standing or sitting." The ALJ considered the "completed check-off reports in June 2014" by Cawley's treating orthopedic surgeon, Dr. Michael Cushner ("Dr. Cushner"), in which Dr. Cushner remarked that Cawley was "limited lifting and carrying up to a maximum of five pounds on an occasional basis, standing and walking less than two hours per day, sitting less than six hours per day, and unspecified limitations on pushing and pulling." In support of these limitations, Dr. Cushner indicated: "see attached" notes. The ALJ gave "limited weight" to Dr. Cushner's opinion,

> as it is unsupported by specific clinical findings and such extreme limits are not apparent from the clinical findings in the attached notes which describe the claimant as having normal range of motion of the neck, shoulder, elbows, wrist, lower back,

3

and bilateral knees accompanied by only some minimal deficits, tenderness, and subjective pain (4F/10). Moreover, the extreme limits are contradicted by the claimant's admitted activities of daily living, as well as, the repeated evidence of record showing that the claimant was in no acute physical distress and otherwise presented with normal range of motion throughout his various areas with full muscle strength and grossly normal gait (9F, 10F, 11F, 12F, 14F, 15F, 16F, 18F, 19F[.] Therefore, his opinion is given highly limited weight in this decision.

## PLAINTIFF'S CONTENTIONS

Cawley contends that the ALJ used an "improper legal standard or inadequate analysis at Step 3" of the sequential analysis of his claim because: (1) the ALJ's decision is "void of a discussion of considerations as to whether Mr. Crawley's combined impairments equal any listing(s)"; and (2) "the ALJ should have obtained medical expert testimony in order to ascertain whether the combination of Mr. Cawley's impairments equaled any listing(s)." For example, the ALJ should have considered whether Cawley's conditions equaled Listing 1.02B, which requires "[i]nvolvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2b." Cawley asserts that the ALJ acknowledged that he has severe impairments, including "bilateral shoulder ten[d]inosis with impingement, partial tear, and status post left shoulder arthroscopy May 2014, as well as right carpal tunnel syndrome status-post October 2014 surgical release," but failed to obtain medical expert testimony to ascertain whether the combination of Cawley's "bilateral shoulder and bilateral wrist impairments equaled Listing 1.02." The ALJ should have also considered whether Cawley's combined impairments equaled Listing 1.04A, which requires "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Cawley

4

maintains that a magnetic resonance imaging ("MRI") of the cervical spine revealed numerous pathologies, including "bilateral severe C8 nerve root impression," which the ALJ did not mention in her decision. Moreover, the record documents limited range of motion, weakness, atrophy, sensory loss, "Babinski and Clonus Reflexes" absent bilaterally and mildly positive straight leg raise.

Cawley contends that the ALJ failed to accord proper weight to Dr. Cushner's opinion, which should have been given "greatest, if not controlling weight." Cawley asserts that Dr. Cushner treated him and examined him 19 times, since May 12, 2014, referred him for an MRI of the cervical spine, interpreted the MRI of the lumbar spine and reviewed the MRI of his left shoulder performed on October 30, 2015, as well as diagnostic testing performed prior to the alleged onset date. Cawley asserts that Dr. Cushner's opinion is well-supported by the diagnostic evidence, such as the MRI of the cervical spine and the MRI of the lumbar spine and the three operative reports. Moreover, Dr. Cushner's opinion is consistent with the diagnostic and clinical evidence in the record.

Cawley asserts that the ALJ's decision is not supported by substantial evidence because the ALJ determined that the vocational expert's testimony is consistent with the information in the DOT, which is inaccurate. The DOT indicates that "work as bench assembler requires *frequent* reaching," which is inconsistent with the ALJ's residual functional capacity limitations findings of "*occasionally* feel and finger with the left non-dominant hand" and "occasionally reach overhead." The ALJ relied on the vocational expert's testimony without acknowledging or explaining this conflict. Thus, the ALJ failed to meet her burden at Step 5 of the sequential analysis.

5

## DEFENDANT'S CONTENTIONS

The defendant asserts that the ALJ found properly that Cawley did not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments because Cawley did not meet his burden of showing that he has "all of the specified medical criteria of the Listing," including Listings 1.02B and 1.04A. For example, in the May 2014 function report, Cawley alleged only difficulties with using his non-dominant hand, such as for buttoning, shaving and using a fork, not "an extreme loss of function of both upper extremities," as required by Listing 1.02B. Moreover, Cawley admitted he was able to drive, prepare simple meals daily and use a computer. Cawley contends that the March 2014 MRI report notes "bilateral severe C8 nerve root impression" with a recommendation for "clinical assessment for C8 radiculopathy"; however, that "is not unequivocal evidence of nerve root compression" required by Listing 1.04A, and the record does not contain either evidence of cervical root compression or a radiculopathy diagnosis. Even assuming that evidence of nerve root compression exists in the record, Cawley "fails to point to evidence establishing Listing 1.04A's requisite 'motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss' and positive straight-leg raising tests in both the sitting and . . . supine positions." The defendant contends that Cawley did not make citation to any authority for the proposition that the ALJ should have obtained medical expert testimony to ascertain whether the combination of impairments equaled any listing. According to the defendant, substantial evidence supports the ALJ's finding at Step 3 of the sequential analysis.

The defendant contends that the ALJ gave proper weight to medical opinions, including that of Dr. Cushner, whose opinion that Cawley had extreme limitations was not consistent with or supported by the record. For example, Dr. Cushner observed in his notes that Cawley had

6

normal ranges of motion and strength in his knees, full range of motion in his shoulders, elbows and wrists, negative straight raise test and no paraspinal tenderness, which contradicted the extreme limitations noted in his opinion as well as Cawley's reports about his daily activities, such as driving without limitations, walking up to one-half mile, preparing meals, shopping and performing household cleaning.

The defendant contends that the ALJ's Step 5 determination is supported by substantial evidence and the ALJ relied properly on the vocational expert's opinion. According to the defendant, the DOT does not include "frequent fingering and frequent reaching" requirements for bench assembler and storage-facility rental clerk positions; rather, Cawley relies, mistakenly, on the DOT's "companion publication, the Selected Characteristics of Occupations as Defined in the Revised Dictionary of Occupational Titles ['SCO']." However, the fact that the DOT description of the occupations the vocational expert identified does not address every aspect of Crawley's limitations is not indicative of a conflict between the vocational expert's testimony and the DOT, which in this circuit "only exists where the vocational expert's testimony and the DOT 'disagree[] in categorizing or describing the requirements of a job as it is performed in the national economy.'" The DOT's silence about a specific restriction respecting Cawley's use of his left non-dominant hand does not create a conflict. Furthermore, concerning "overhead reaching," other district courts have found that no conflict exists where the DOT is silent on the matter.

## LEGAL STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing

7

the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g).

> A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (citations omitted).

"Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." Kohler v. Astrue, 546 F.3d 260, 265 (2d Cir. 2008) (internal citations omitted).

To qualify for disability benefits, an individual must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's regulations establish a five-step process for determining a disability claim. See 20 C.F.R. § 404.1520(a)(4).

> If at any step a finding of disability or nondisability can be made, the [Social Security Administration] will not review the claim further. At the first step, the agency will find nondisability unless the claimant shows that he is not working at a "substantial gainful activity." At step two, the [Social Security Administration] will find nondisability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the [Social Security Administration] assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the [Social Security Administration] to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is

8

capable of performing other jobs existing in significant numbers in the national economy.

Barnhart v. Thomas, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-80 (2003) (internal citations omitted).

"The applicant bears the burden of proof in the first four steps of the sequential inquiry; the Commissioner bears the burden in the last." Talavera v. Astrue, 697 F.3d 145, 151 (2d Cir. 2012).

## APPLICATION OF LEGAL STANDARD

*Step 3 Determination*

Cawley contends that: (i) "the ALJ's decision was devoid of a discussion of considerations as to whether Mr. Cawley's combined impairments equal any listing(s)"; and (ii) "the ALJ should have obtained medical expert testimony in order to ascertain whether the combination of Mr. Cawley's impairments equaled any listing(s)," without making citation to any binding authority requiring the ALJ to provide "a discussion of considerations as to whether Mr. Cawley's combined impairments equal any listing(s)" and to obtain "medical expert testimony in order to ascertain whether the combination of Mr. Cawley's impairments equaled any listing(s)." In considering a combination of Cawley's impairments and determining "medical equivalence," the ALJ was required to "compare [Cawley's] findings with those for closely analogous listed impairments" and, if "the findings related to [Cawley's] impairments are at least of equal medical significance to those of a listed impairment," to "find that [Cawley's combination of impairments is medically equivalent to that listing." 20 C.F.R. § 404.1526(b)(3). "For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in

9

severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531, 110 S. Ct. 885, 891 (1990). The ALJ found, properly, that none of Cawley's impairments "considered singly or in combination," is medically equivalent to those of a listed impairment, based on "insufficient evidence" to satisfy "any of the thresholds" of the considered listings, and the ALJ specified criteria that were not satisfied in connection with the listings she considered. No binding authority requires the ALJ to: (a) provide "a discussion of considerations" concerning Cawley's combined impairments and medical equivalence; or (b) obtain "medical expert testimony in order to ascertain whether the combination of Mr. Cawley's impairments equaled any listing(s)." The Court finds that substantial evidence supports the ALJ's Step 3 determination and the ALJ did not commit any legal error at Step 3 of the sequential analysis.

*Weight Given to the Treating Physician's Opinion*

Unless the ALJ gives a treating source's opinion controlling weight, the ALJ must consider the following factors in determining what weight to give to a treating source's opinion: (1) examining relationship; (2) treatment relationship; (3) length of the treatment relationship and the frequency of examination; (4) nature and extent of the treatment relationship; (5) relevant evidence supporting the opinion; (6) consistency of the opinion with the record as a whole; (7) treating physician's specialization; and (8) any other relevant factors. See 20 C.F.R. § 404.1527(c). "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the Social Security Administration] will give that opinion. The better an explanation a source provides for an opinion, the more weight [the Social Security Administration] will give that opinion." 20 C.F.R. § 404.1527(c)(3). "Generally, the more consistent an opinion is with the record as a whole, the

more weight [the Social Security Administration] will give to that opinion." 20 C.F.R. § 404.1527(c)(4).

The ALJ gave proper weight to Dr. Cushner's opinion and explained the reasons for the weight given, namely, that Dr. Cushner's opinion is: (i) not supported by "the clinical findings in the attached notes"; and (ii) "contradicted by [Cawley's] admitted activities of daily living, as well as the repeated evidence of record showing that [Cawley] was in no acute physical distress and otherwise presented with normal range of motion throughout his various impacted areas with full muscle strength and grossly normal gait." In connection with each of the factors the ALJ must consider when determining the weight to give to the treating source's opinion under 20 C.F.R. § 404.1527(c), Cawley points to certain facts he contends support giving greater weight to Dr. Cushner's opinion than the weight given by the ALJ. However, the ALJ's factual findings in support of the weight given to Dr. Cushner's opinion are supported by substantial evidence. See Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) ("Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence.") (citation omitted). The Court finds that the ALJ did not err when she gave "highly limited weight" to Dr. Cushner's opinion and substantial evidence supports the ALJ's determination of the weight given to Dr. Cushner's opinion.

*Step 5 Determination*

The defendant is correct that: (i) the DOT does not include the "fingering and reaching demands" for the occupations listed by the vocational expert as existing in the national economy that a hypothetical person with Cawley's limitations can perform, namely "bench assembler" and "rental clerk"; and (ii) Cawley based his argument on the SCO, which indicates that the two jobs

11

identified by the vocational expert require "frequent reaching," and "bench assembler" also requires "frequent fingering." Cawley is correct that the SCO's description of physical demands for the "bench assembler" and "rental clerk" jobs exceeds his residual functional limitation to "occasionally . . . finger with the left non-dominant hand" and "occasionally reach overhead." However, the ALJ asked the vocational expert if her testimony "was consistent with the DOT or based on [her] expertise or what?" The vocational expert answered: "Yes, it is. And it is - - it is also based on my conversations with employers, my knowledge of jobs as they are actually performed, my education and training with regard to overhead reach, which also is not specifically described in the DOT." Thus, the vocational expert's testimony was based, not only on the DOT, which "describes jobs as they are generally performed," Jasinski v. Barnhart, 341 F.3d 182, 185 (2d Cir. 2003), but also on her: (a) expertise and knowledge of job requirements "as they are actually performed"; (b) "conversations with employers"; and (c) "education and training with regard to overhead reach." The vocational expert's "deviation[] from the [DOT's]" description of jobs as they are generally performed does not, without more, create a "conflict" between the vocational expert's testimony and the DOT. See id. Thus, the ALJ relied properly on the testimony of the vocational expert, without finding a conflict between the vocational expert's testimony and the DOT. The Court finds that substantial evidence supports the ALJ's finding at Step 5 of the sequential analysis and the ALJ did not commit legal error at Step 5.

## CONCLUSION

For the foregoing reasons, the plaintiff's motion, Docket Entry No. 11, is denied, and the defendant's motion, Docket Entry No. 15, is granted.

Dated: New York, New York
       August 2, 2018

SO ORDERED:

*Kevin Nathaniel Fox*
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE